## UNITED STATES DISTRICT COURT DISTRICT OF MAINE

| | |
|---|---|
| **David and Sandy Marrett**<br>PLAINTIFFS, | Case No._____<br><br>Judge: _____ |
| **Caribou Utilities District**<br>DEFENDANT. | |

## COMPLAINT

**NOW COMES** the Plaintiffs, David and Sandy Marrett, **(Marretts),** to file a civil action seeking damages for the negligent and intentional actions of the Caribou Utilities District, **(CUD)**, which resulted in catastrophic water damage to the Plaintiff's home, causing complete destruction and significant financial loss. The Defendants' actions also violated federal laws regarding the proper disclosure of utility bills and deprived the Plaintiff of due process.

This was our family home in which we raised our children. We were temporarily renting it to a friend who lost everything in a fire. This was not an abandoned home; this was our family home which we fully intended to return to. However, no matter the circumstances, the Defendant had no legal grounds to violate our rights.

## JUST REASONS FOR DELAY IN FILING

The Plaintiffs acknowledge the two-year statute of limitations set forth in federal law for filing complaints. However, the delay in filing this complaint is due to several significant and compounding factors that constitute reasonable causes for delay under federal law:

A. **Ongoing Litigation and Self-Representation**: The extensive and ongoing litigation with Aroostook County Federal Savings & Loan (ACFSL), which began in January 2022, has been exhaustive and consuming. Throughout this process, the Marretts have been unable to secure legal representation due to financial constraints and have had to represent themselves (pro se). This has required the Marretts to educate themselves on legal procedures and laws, a daunting task that has considerably extended the time required to prepare and file this complaint. The courts recognize that self-representation and the complexity of legal procedures can be valid reasons for delay (*Haines v. Kerner*, 404 U.S. 519, 1972).

B. **Personal and Health-Related Issues**: The Marretts have been dealing with significant personal and health-related issues, including Mr. Marrett's cancer diagnosis and treatment. This has demanded their full attention and resources, further delaying their ability to focus on the legal proceedings. The courts have acknowledged that health issues can be a legitimate cause for delay (*Zipes v. Trans World Airlines*, Inc., 455 U.S. 385, 1982).

C. **Bereavement:** Adding to their emotional and physical burden, the Marretts suffered the loss of Mrs. Marrett's mother on March 1, 2024. This bereavement has understandably had an impact on the Marretts' capacity to manage the legal and procedural requirements necessary for filing this complaint.

D. **Displacement and Financial Hardship**: The Marretts have been completely displaced for the past 8 months, living with various family members and facing significant financial hardship due to the destruction of their home. This displacement has created additional

      logistical challenges and stress, making it even more difficult to pursue their legal claims in a timely manner.

E. **Defendants' Actions and Procedural Irregularities:** The CUD have exploited the Marretts' pro se status and inability to secure legal counsel. On November 15, 2022, the Marretts gave notice of their intent to remove the case to federal court, and a notice of removal was filed and accepted on January 1, 2023. Instead of responding, the bank filed a motion for remand. On March 3, 2023, Judge Mallonee from the state court denied the Marretts' motion to amend the counterclaim two months after the case had been moved to federal court. This procedural confusion and the state court's denial of the motion to amend after the federal removal significantly delayed and obstructed the Marretts' pursuit of justice. The state court's actions forced the Marretts to litigate in two courts simultaneously, which was both malicious and obstructive, further exacerbating their challenges.

    These factors, taken together, have contributed to the delay in filing this federal complaint. The Marretts have faced immense personal and legal challenges while striving to seek justice and hold the CUD accountable for their actions. Federal law allows for equitable tolling of the statute of limitations in situations where the plaintiffs face extraordinary circumstances beyond their control (*Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 1990).

## PARTIES

1. Plaintiffs, David and Sandy Marrett, are residents of East Longmeadow, Massachusetts.

2. Defendant, Caribou Utilities District, is a public utility company located in Caribou, Maine, functioning as a quasi-municipal entity.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.

4. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 as this action involves questions of federal law, including but not limited to violations of 42 U.S.C. § 1983 and the Fair Housing Act.

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

6. The Terms and Conditions of the Caribou Utilities District Waterworks Division, and filed with the Maine Public Utilities District, constitutes a contract between the Marretts and the CUD.

7. On or about October of 2004, the Marretts applied for, and was approved for service in accordance with Caribou Utilities District – Water Works Division, Terms and Conditions §1, in which an application for service may be made only by the owner or occupant of the premises to be served.

8. On or about May 7, 2021, the Marretts received a Disconnect Notice by the CUD for non-payment of service by the Marrett's tenants.

9. On or about May 31, 2021, service was disconnected to the Marrett's family home.

10. From May 31, 2021, to November 2021, there was no recorded water usage at the Marrett's property.

11. However, on November 4, 2021, without the Marretts' knowledge or consent, a representative from the bank restored the water service to restart the hot water heating system following an oil delivery.

12. At the time the service was restored, the Marrett's had just listed their house for sale under duress, and these actions were taken without the Marrett's authorization.

13. And then on December 1, 2021, CUD began sending the water bills to the bank instead of to the Marretts, thereby preventing timely awareness of any or all excessive water usage.

14. Almost two full months after the water was restored without the Marretts' knowledge, and almost two full months **after** CUD started forwarding the Marrett's bills to the bank, the bank served the Marrett's with a Foreclosure Complaint on or about February 16, 2022.

15. The Marretts Answered and filed a Counterclaim on March 11, 2022, which has temporarily halted the foreclosure process.

16. On or about May 9, 2022, during the discovery phase of the Marrett's case against the bank, the Marrett's mother frantically called the CUD to inform them that she could hear water pouring into her daughter's house and to request that they immediately shut the water off.

17. CUD shut off the water immediately, and when Ms. Sandy Marrett quickly flew home to assess the damage, she found their family home destroyed.

18. The Marretts immediately contacted CUD and demanded answers. Subsequently, on June 1, 2022, CUD informed the Marretts that 1.8 million gallons of water had flooded the Marretts' home in just approximately 4.5 months.

19. **The amount of water that was allowed to flood the Marrett's home exceeded the total capacity of Caribou city's three water towers, which accumulate 1.6 million gallons, indicating severe negligence or intentional wrongdoing by the Defendants.**

20. Ms. Marrett, while dealing with significant personal issues including her husband's cancer prognosis and living in Ohio, faced contempt and lack of concern from the CUD, further exacerbating the emotional and financial distress.

21. Therefore, on July 26, 2022, the Marretts filed their First Amended Counterclaim, adding Caribou Utilities District as Defendants due to their negligence and other wrongful actions.

    **(Appendix A – Marrett's First Motion to Amend and Amended Counterclaim)**

22. Despite being duly served, CUD failed to answer the Amended Counterclaim within the 21-day period required by Maine Rule of Civil Procedure 12(a).

23. Instead of providing a substantive response to the counterclaim, CUD submitted a perfunctory motion, which failed to engage with the specific allegations and was inadequate in addressing the legal and factual issues raised. This inadequate response exemplifies the CUD's disregard for the legal process and the Marrett's rights.

    **(Appendix B – Defendant's Perfunctory Motion) (Appendix C – Judges Order)**

24. The claims against CUD are based on their independent and distinct wrongful actions of restoring water service without proper authorization and failing to notify the Marretts, which directly resulted in the catastrophic water damage to the Plaintiff's property.

25. Given the distinct and independent actions of the Caribou Utilities District in restoring the water service without authorization and failing to notify the Marretts, they can be held severally liable for the resulting damages.

26. The replacement cost of the Plaintiff's home is estimated at $324,000.

    **(Exhibit D – Estimate Replacement Cost from a certified insurance agent)**

## CLAIMS FOR RELIEF

### Count I:

### BREACH OF CONTRACT

27. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

28. **Existence of a Contract**: The Terms and Conditions of the Caribou Utilities District Waterworks Division, as filed with the Maine Public Utilities District, constitute a binding contract between the Marretts and Caribou Utilities District (CUD).

29. **Performance by Plaintiffs**: The Marretts complied with their contractual obligations by maintaining their account and paying for the services rendered until the disconnection notice was issued due to non-payment by their tenants.

30. **Breach by Defendant**: CUD breached several terms and conditions of our contract, including but not limited to:

**a) Unauthorized Use of Water**: Restoring water service without the Marrett's knowledge or consent, in violation of the CUD's policy which prohibits unauthorized use and tampering with utility property.

**b) Maintenance of Plumbing**: Failing to notify the Marretts, preventing them from taking necessary actions to protect their plumbing, which resulted in severe damage due to lack of maintenance as required by the CUD's policy.

**c) Access to Premises**: Restoring service without proper notification and entry authorization, violating the CUD requirement to provide access for utility work under proper conditions.

**d) Liability**: Negligence in managing water service and failing to prevent damage, despite the policy outlining the utility's limited liability only when following proper procedures.

**e) Water Conservation and Utilization:** A water utility must take all reasonable steps to prevent the unnecessary waste of water.

**f) Metering Policies**: Failing to accurately test and report flow rate, monitor and report water usage, as per the Defendant's policy requiring accurate metering and billing.

**g) Adjustment of High-Water Bills**: Not addressing the significant increase in water usage promptly and appropriately, in violation of the Defendant's policy to adjust bills for excessive water usage.

**h) Customer Privacy**: A utility shall not disclose, sell or transfer individual customer information, including, but not limited to, a customer's name, address, telephone number, water usage, or payment history, to a third party without the consent of a customer.

32. As a direct and proximate result of CUD's breaches, the Marretts' property was catastrophically damaged by 1.8 million gallons of water flooding their home, leading to complete destruction.

33. The Marretts have suffered substantial damages as a result of CUD's breaches, including:

    a. **Property Damage**: The replacement cost of the Marretts' home, estimated at $324,000.

    b. **Emotional Distress**: Significant emotional distress due to the destruction of their family home, displacement, and the financial burden resulting from the breach.

    c. **Financial Loss**: Additional costs related to temporary housing, legal fees, and other expenses incurred as a result of the breaches.

34. Under federal contract law, parties to a contract are entitled to be compensated for breaches that result in damages. The right to compensation is recognized under common law principles and codified in various federal statutes governing contracts and liability. The Restatement (Second) of Contracts § 347 outlines the general measure of damages for breach of contract, emphasizing the injured party's right to be placed in as good a position as they would have been if the contract had been performed.

## Count II:

## **VIOLATION OF 42 U.S.C. § 1983**

33. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

34. Under 42 U.S.C. § 1983, it is unlawful for any person acting under color of state law to deprive another of any rights, privileges, or immunities secured by the Constitution and laws of the United States.

35. The Defendant, Caribou Utilities District, is a quasi-municipal entity and was acting under color of state law at all relevant times.

36. The Defendant's actions in restoring water service without the Plaintiffs' knowledge or consent, and failing to notify the Plaintiffs, deprived the Plaintiffs of their rights, privileges, or immunities secured by the Constitution, specifically their right to due process under the Fourteenth Amendment.

37. The Defendants' conduct deprived the Plaintiffs of their property without due process of law by failing to provide proper notice and an opportunity to address the restoration of water service, leading to the catastrophic damage to the Plaintiffs' home.

38. The Defendants' failure to properly communicate with the Plaintiffs and the decision to send bills to the bank instead of directly to the Plaintiffs effectively deprived the Plaintiffs of essential information necessary to maintain and protect their property.

39. The Plaintiffs were once recognized with a downtown revitalization award by the city of Caribou for their business, Works of Heart, which they had owned and operated. This recognition highlighted their positive impact on the community. As a result of the Defendants' actions, the Plaintiffs' reputation has been significantly damaged, causing further personal and professional harm.

40. In *Mueller v. Penobscot Valley Hospital*, 538 A.2d 294 (Me. 1988), the court stated that the Maine Tort Claims Act applies only to actions arising in tort and does not extend to actions based on contract or federal claims brought under 42 U.S.C. § 1983. The court confirmed that sovereign immunity does not shield government entities from liability for violations of federal rights.

41. In *Monroe v. Pape*, 365 U.S. 167 (1961), the Supreme Court held that § 1983 provides a remedy for the deprivation of rights secured by the Constitution by individuals acting under color of state law. The Defendants' actions in this case similarly deprived the Plaintiffs of their constitutional rights.

42. As a direct and proximate result of the Defendants' actions, the Plaintiffs suffered significant financial loss and emotional distress, warranting the relief sought in this complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that this Court enter judgment in their favor and grant the following relief:

43. **Compensatory Damages**:
    A. **Property Damage**: Pursuant to the Restatement (Second) of Contracts § 347, which allows the injured party to be placed in as good a position as they would have been if the contract had been performed.
    Compensatory damages in the amount of **$324,000** for the replacement cost of the Plaintiffs' home.

B. **Emotional Distress**: Emotional distress damages are recognized under federal common law principles when there is a breach of contract accompanied by conduct that is particularly egregious or oppressive.

Compensatory damages for significant emotional distress due to the destruction of their family home, displacement, and the financial burden resulting from the breach, in the amount of **$100,000**.

C. **Financial Loss**: Additional compensatory damages for costs related to temporary housing, legal fees, and other expenses incurred as a result of the breaches, in the amount of **$50,000**.

44. **Statutory Damages**:

Statutory damages under 42 U.S.C. § 1983 for the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States, in the amount of **$200,000**.

45. **Punitive Damages:** Punitive damages are appropriate under federal law when the defendant's conduct is shown to be motivated by malice or involves a reckless disregard for the plaintiff's rights.

Punitive damages in the amount of **$200,000** to punish the Defendants for their willful, wanton, and reckless conduct and to deter similar conduct in the future.

46. **Declaratory Relief**:

A declaratory judgment that the actions of the Defendants were unlawful and violated the Plaintiffs' rights under state and federal law, specifically under the contract and 42 U.S.C. § 1983.

47. **Injunctive Relief**:

    Injunctive relief requiring Defendants to implement policies and procedures to prevent similar violations in the future, ensuring compliance with federal and state laws regarding utility service and customer rights.

48. **Costs and Fees**:

    Court costs of suit, including any applicable fees and other costs incurred in bringing this action. Under 42 U.S.C. § 1988.

49. **Other Relief**:

    Any other relief that the Court deems just and proper to fully compensate the Plaintiffs for their losses and to ensure that justice is served.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Date: July 16, 2024

Respectfully Submitted,

/s/ David T Marrett
/s/ Sandy J Marrett
David T. Marrett
Sandy J. Marrett
184 Vineland Avenue
East Longmeadow, MA 01028
(843) 471-6099
sandymarrett@proton.me

## **Important Notice**

**Replies must be filed no later than 21 days after perfection of service. Failure to file an opposition within 21 days of receiving this Complaint will be deemed a waiver of all objections to this Complaint.**

## CERTIFICATE OF SERVICE

The undersign certifies that on July 16, 2024, a

1. Complaint,

2. and a Certificate of Service was filed electronically with the Clerk of Court using the CM/ECF system which will send notifications of such filings to all parties of record.

Dated: July 16, 2024

/s/ David T Marrett
/s/ Sandy J Marrett
David T. Marrett
Sandy J. Marrett
184 Vineland Avenue
East Longmeadow, MA 01028
Telephone: (843) 471-6099
Email: sandymarrett@proton.me

Caribou Utilities District
Frederick F. Costlow
At Richardson, Whitman, Large, and Badger
One Merchants Plaza
Sixth Floor, Suite 603
Bangor, Maine 04401
FCostlow@rwlb.com


Peter Tanous
C/O Maine Municipal Association
60 Community Drive
Augusta, Maine 04330
ptanous@memun.org