UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DAVID T. MARRETT, et ux.,            )
                                     )
             Plaintiffs,             )
                                     )
      v.                             )      No. 1:24-cv-00254-JAW
                                     )
CARIBOU UTILITIES DISTRICT,          )
                                     )
             Defendant.              )

**ORDER ON MOTION TO DISMISS**

A married couple, appearing pro se, sues a public utility for water damage to their home.  Plaintiffs allege the municipal entity negligently or intentionally resumed water service to their home, without proper notice or authorization, after plaintiffs had disconnected service and while the home was subject to foreclosure proceedings.  Claiming breach of contract and due process violations, the couple seeks injunctive relief, declaratory judgment, and monetary damages.  Before the court is the utility's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Concluding that plaintiffs' complaint does not plausibly state a claim upon which relief can be granted, the court grants the motion to dismiss without prejudice.  The court accordingly lifts the stay on the pending motion for summary judgment and dismisses that motion as moot.

## I.    PROCEDURAL BACKGROUND

On July 16, 2024, David and Sandy Marrett (the Marretts) filed a complaint against the Caribou Utilities District (CUD), claiming that extensive water damage to their home was caused by the Defendant's breach of contract and due process

violations. *Compl.* (ECF No. 1). On August 21, 2024, CUD filed a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Def. Caribou Utils. Dist.'s Mot. to Dismiss Pls. David T. Marrett and Sandy J. Marrett's Compl.* (ECF No. 9) (*Mot. to Dismiss*). That same day, the Marretts responded in opposition. *Pls.' Opp'n to Def.'s Mot. to Dismiss* (ECF No. 10) (*Pls.' Opp'n*). On August 28, 2024, CUD replied. *Def. Caribou Utils. Dist.'s Reply to Pls. David and Sandy Marrett[s]'s Resp. in Opp'n to Mot. to Dismiss (ECF 9)* (ECF No. 13) (*Reply*).

On August 25, 2024, the Marretts filed a motion for summary judgment. *Mot. for Summ. J.* (ECF No. 11). On August 28, 2024, the Defendant moved to stay the motion for summary judgment pending resolution of the motion to dismiss, *Def. Caribou Utils. Dist.'s Mot. to Stay Pls. David and Sandy Marrett[s]'s Mot. for Summ. J. (ECF No. 11)* (ECF No. 15), which the Court granted on September 20, 2024. *Order on Mot. to Stay Mot. for Summ. J.* (ECF No. 22).

## II.   FACTUAL RECORD[1]

Caribou Utilities District[2] is a public utility located in Caribou, Maine, functioning as a quasi-municipal entity. *Compl.* at 4.

---

[1]   Consistent with the motion to dismiss standard, the Court relied on the complaint's well-pleaded facts. "[T]he court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements").

[2]   The Marretts variously refer to the Defendant as Caribou Utility District and Caribou Utilities District. The Defendant refers to itself as Caribou Utility District. *See Def. Caribou Utility District's Mot. to Dismiss Pls. David T. Marrett and Sandy J. Marrett's Compl.* at 1 (ECF No. 9). Although the Court is tempted to use Caribou Utility District on the assumption that the Defendant knows its own name, the documents that the Defendant attached to its motion to dismiss list the contracting party as Caribou Utilities District. Therefore, the Court has used Caribou Utilities District in referring to the Defendant.

David and Sandy Marrett currently reside in South Hadley, Massachusetts but owned a home in Caribou, Maine, which was their family home where they raised their children.[3]  *Id*. at 1.  The Marretts were temporarily renting the home to a friend at the time of the events giving rise to this suit but intended to return to the Caribou property.  *Id*.

On or about October of 2004, the Marretts applied and were approved for service at this home in accordance with Caribou Utilities District, Water Works Division, Terms and Conditions § 1.  *Id*. at 4.

On or about May 7, 2021, the Marretts received a Disconnect Notice from the CUD for non-payment of service by the Marretts's tenants.  *Id*. at 5.  On or about May 31, 2021, CUD disconnected service and from May 31, 2021 to November 2021, the property recorded no water usage.  *Id*.

However, on November 4, 2021, without the Marretts's knowledge or consent, a representative from Aroostook County Federal Savings & Loan (S&L) restored the water service to restart the hot water heating system following an oil delivery.[4]  *Id*.  At the time service was restored, the Marretts had just listed their house for sale under duress, and these actions were taken without their authorization.  *Id*.

---

[3]    As of the date of the filing of the complaint, the Marretts lived in East Longmeadow, Massachusetts.  *Compl*. at 1.  On November 11, 2024, the Marretts filed a notice of change of address, stating that they had moved to South Hadley, Massachusetts.  *Notice* (ECF No. 23).

[4]    Throughout their complaint, the Marretts refer to "the bank."  The complaint does not clarify to which bank it refers, but the Court believes Plaintiffs are referring to Aroostook County Federal Savings & Loan.  As the Marretts describe in the complaint, they have been in litigation with S&L since January 2022.  *Compl*. at 2.  Throughout this order, the Court interprets the Marretts's references to "the bank" as references to S&L.

3

On December 1, 2021, CUD began sending the Marretts's water bills to S&L rather than to the Marretts, thereby preventing timely awareness of any and all excessive water usage. *Id.*

On or about February 16, 2022, almost two months after water service was restored without the Marretts's knowledge and after CUD began forwarding the Marretts's water bills to S&L, S&L served the Marretts with a Foreclosure Complaint. *Id.* On March 11, 2022, the Marretts answered the complaint and filed a counterclaim, which has temporarily halted the foreclosure. *Id.*

On or about May 9, 2022, during the discovery phase of the Marretts's case against S&L, Sandy Marrett's mother "frantically called the CUD to inform them that she could hear water pouring into her daughter's house and to request that they immediately shut the water off." *Id.* CUD immediately shut off the water. *Id.* at 6.

Soon after, Ms. Marrett visited the home to assess the damage; she found the Marretts's family home destroyed. *Id.*

The Marretts immediately contacted CUD and demanded answers. *Id.* On June 1, 2022, CUD informed the Marretts that 1.8 million gallons of water had flooded their home over a period of approximately four-and-a-half months. *Id.* The replacement cost of the Marretts's home is estimated at $324,000. *Id.* at 7.

Ms. Marrett, while also dealing with significant personal issues including her husband's cancer prognosis and while living in Ohio, says she faced contempt and lack of concern from the CUD, further exacerbating her emotional and financial distress. *Id.* at 6.

## III.   THE PARTIES' POSITIONS

### A.   The Allegations in the Complaint

The Marretts bring two counts in their complaint: one for breach of contract, and a second for violation of their due process rights pursuant to 42 U.S.C. § 1983. Before turning to these two counts, the Marretts address a potential statute of limitations issue.

### 1.   The Preliminary Issue of the Statute of Limitations

The Marretts "acknowledge the two-year statute of limitations set forth in federal law for filing complaints." *Compl.* at 1.  "However," they say, "the delay in filing this complaint is due to several significant and compounding factors that constitute reasonable causes for delay under federal law." *Id.*  They discuss their separate and ongoing litigation with S&L, their "significant personal and health-related issues, including Mr. Marrett's cancer diagnosis and treatment," the recent loss of Ms. Marrett's mother, and the displacement and financial hardship occasioned by the loss of their home. *Id.* at 2-3.  The Marretts additionally argue CUD "exploited the Marretts's pro se status" and summarize the procedural history of a separate action to which CUD is not a party. *Id.* at 3.  Alleging that "[f]ederal law allows for equitable tolling of the statute of limitations in situations where the plaintiffs face extraordinary circumstances beyond their control," *id.* (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89 (1990)), Plaintiffs turn to the substantive counts of their complaint.

## 2.      The Breach of Contract Claim

First, the Marretts state that "[t]he Terms and Conditions of the [CUD] Waterworks Division, as filed with the Maine Public Utilities District, constitute a binding contract between the Marretts and the . . . CUD." *Id.* at 7.  They assert that while they "complied with their contractual obligations by maintaining their account and paying for the services rendered until the disconnection notice was issued due to non-payment by their tenants," *id.* at 7, CUD breached several terms and conditions of their contract, including:

a) **Unauthorized Use of Water**: Restoring water service without the Marrett[s]'s knowledge or consent, in violation of the CUD's policy which prohibits unauthorized use and tampering with utility property.

b) **Maintenance of Plumbing**: Failing to notify the Marretts, preventing them from taking necessary actions to protect their plumbing, which resulted in severe damage due to lack of maintenance as required by the CUD's policy.

c) **Access to Premises**: Restoring service without proper notification and entry authorization, violating the CUD requirement to provide access for utility work under proper conditions.

d) **Liability**: Negligence in managing water service and failing to prevent damage, despite the policy outlining the utility's limited liability only when following proper procedures.

e) **Water Conservation and Utilization** A water utility must take all reasonable steps to prevent the unnecessary waste of water.

f) **Metering Policies**: Failing to accurately test and report flow rate, monitor and report water usage, as per the Defendant's policy requiring accurate metering and billing.

g) **Adjustment of High-Water Bills**: Not addressing the significant increase in water usage promptly and appropriately, in violation of the Defendant's policy to adjust bills for excessive water usage.

    h) **Customer Privacy**: A utility shall not disclose, sell or transfer individual customer information, including but not limited to, a customer's name, address, telephone number, water usage, or payment history, to a third party without the consent of a customer.

*Id.* at 8-9 (emphasis in original) (cleaned up).

    Plaintiffs assert that "as a direct and proximate result of CUD's breaches, the Marretts's property was catastrophically damaged by 1.8 million gallons of water flooding their home, leading to complete destruction." *Id.* at 9.   They seek relief for property damage estimated at $324,000; "significant emotional distress due to the destruction of their family home, displacement, and the financial burden resulting from the breach," amounting to $100,000; and the financial loss of "additional costs related to temporary housing, legal fees, and other expenses incurred as a result of the breaches," amounting to $50,000.  *Id.* at 9, 11-12.

    They conclude their breach of contract claim by citing "federal contract law" in support of their argument that "parties to a contract are entitled to be compensated for breaches that result in damages."  *Id.* at 9.

### 3.    The Section 1983 Claim

    The Marretts also bring a claim of civil rights violation pursuant to 42 U.S.C. § 1983. *Id.* at 10.  After positing that CUD is "a quasi-municipal entity and was acting under color of state law at all relevant times," the Plaintiffs argue that CUD's restoration of their water service without their knowledge or consent deprived them of their property without due process of law, and thus violated the Fourteenth Amendment, "by failing to provide proper notice and an opportunity to address the restoration of water service, leading to the catastrophic damage to the Plaintiffs'

7

home." *Id.* By not properly communicating with the Marretts and sending water bills to S&L instead, Plaintiffs contend CUD "effectively deprived [them] of essential information necessary to maintain and protect their property," causing reputational damage constituting "further personal and professional harm." *Id.* They also seek "statutory damages under 42 U.S.C. § 1983 for the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States, in the amount of $200,000." *Id.* at 12 (emphasis removed).

Anticipating CUD's response that it holds a defense of sovereign immunity as a municipal entity, the Marretts first assert that the Maine Supreme Judicial Court has held "the Maine Tort Claims Act [MTCA] applies only to actions arising in tort and does not extend to actions based on contract or federal claims brought under 42 U.S.C. § 1983" and that "sovereign immunity does not shield government entities from liability for violations of federal rights." *Id.* at 11 (citing *Mueller v. Penobscot Valley Hosp.*, No. PEN-87-141, 538 A.2d 294, 297-300 (Me. 1988) (pin citation added)). Second, they direct the Court's attention to *Monroe v. Pape*, 365 U.S. 167 (1961), in which the Supreme Court held "§ 1983 provides a remedy for the deprivation of rights secured by the Constitution by individuals acting under color of state law." *Id.* (citing *Monroe*, 365 U.S. at 168) (pin citation added).

### 4.    Requests for Relief

For both Counts One and Two, Plaintiffs seek compensatory damages in the amount of $324,000 for the replacement cost of their home; $100,000 for significant emotional distress; $50,000 to compensate them for their expenditures to cover costs

related to temporary housing, legal fees, and other expenses incurred as a result of the breaches; $200,000 in statutory damages pursuant to 43 U.S.C. § 1983; and punitive damages of $200,000 for conduct motivated by malice or involving a reckless disregard for their rights.  *Id.* at 12-13.  They additionally seek a declaratory judgment "that the actions of the Defendant[] w[as] unlawful and violated the Plaintiffs' rights under state and federal law, specifically under the contract and 42 U.S.C. § 1983," as well as injunctive relief requiring CUD "to implement policies and procedures to prevent similar violations in the future, ensuring compliance with federal and state law regarding utility service and customer rights"; court costs, including any applicable fees and other costs incurred in bringing this suit, pursuant to § 1983; and any other relief that the Court deems just and proper.  *Id.* at 12-13.

**B.  CUD's Motion to Dismiss**

CUD moves to dismiss both counts in Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted.

**1.  The Statute of Limitations Issue**

CUD first responds to Plaintiffs' concession that they did not timely file their complaint within a statute of limitations.  *Mot. to Dismiss* at 4.  First, CUD says, Plaintiffs "do not state which claim or cause of action [the statute of limitations] applies to."  *Id.*  Second, they say Plaintiffs give no reason for the late filing beyond "personal reason[s]" and there is no caselaw supporting the claim that "personal hardships of Plaintiffs negate a Defendant's right to a Statute of Repose."  *Id.*

9

If Plaintiffs are referring to the statute of limitations for tort actions in 14 M.R.S.A. § 8110, the Defendant observes that "<u>ALL</u> Tort actions against a municipal entity would be time barred as the date of discovery is the last possible date to begin the period." *Id.* at 7 (emphasis in original). Here, CUD proffers that date is May 9, 2022, and that the statute began to run "much earlier," "at the time of the alleged act." *Id.* Under either date, the Defendant says, Plaintiffs' filing of their complaint was untimely. *Id.* (citing 14 M.R.S.A. § 8110).

CUD adds that "neither failure to Notice Reconnection or reconnection itself" functions as an exception to their sovereign immunity defense. *Id.* (citing 14 M.R.S. §8104-A).

### 2.    The Breach of Contract Claim

Turning to Count One, CUD first observes that "Plaintiffs did not attach the most important document in any Breach of Contract case . . . the Contract itself." *Id.* at 7. A contract, CUD says, "needs to be interpreted as a whole," and "asserts the failure to include it should be fatal." *Id.*

CUD then turns to the plain language of the contract, which it attaches to its motion to dismiss. *Id.*, Attach. 1, *Caribou Utils. Dist., Waterworks Div., Terms and Conditions Filed Dec. 16, 2011* (ECF No. 9-1) (*2011 Contract*); *Mot. to Dismiss*, Attach. 2, *Caribou Utils. Dist., Waterworks Div., Terms and Conditions Filed May 14, 2021* (ECF No. 9-2) (*2021 Contract*).[5] CUD reports that "[t]he Contract specifically states that damage claims can only be brought under the [MTCA]." *Mot. to Dismiss* at 8.

---

[5]    CUD notes that these two versions of the contract "change prices but are identical with respect to the operative portions." *Mot. to Dismiss* at 8.

CUD directs the Court to Paragraph 16 of the 2011 Contract which, in relevant part, describes the extent of the Defendant's liability: "[CUD] will only be liable for any damages arising from claims to the extent liability is provided in the [MTCA]." *Id.* (quoting *2011 Contract* ¶ 16).

CUD argues no exception to immunity is applicable to this claim, and even if it was, the claim is time barred due to the statute of limitations. *Id.* (citing 14 M.R.S.A. §§ 8103, 8104(A)). The Defendant avers that it is a municipal entity, *id.* at 9 (citing *Compl.* ¶ 2), and 14 M.R.S.A. § 8103 "states that all governmental entities are immune from suit on all tort claims." *Id.* In support, CUD attaches the Maine Municipal Association Member Coverage Certificate to its motion "[f]or the purposes of demonstrating Non-Waiver of Immunity under the provisions of 14 M.R.S.A. § 8116." *Id.* (citing *id.*, Attach. 3, *Member Coverage Certificate* at 2 (ECF No. 9-3)). The Coverage Certificate "limits the coverage to enumerated exception[s] to Immunity," the Defendant says, and does not except either the failure to provide notice of service reconnection or the act of reconnection itself. *Id.* (citing *Member Coverage Certificate* at 2). CUD proffers that the Coverage Certificate is "routinely included in Dispositive Motions by most of Maine's Municipalities and has been for many years" and "[t]here is no coverage for claims in which the Municipal Entity is Immune under the [MTCA]." *Id.*

Even if sovereign immunity does not apply, the Defendant avers the Plaintiffs' contract claim still fails. *Id.* "The inescapable fact is that the Plaintiffs allege CUD turned the water on at the meter not in the house," and state in their complaint that

"a representative of the bank restored service to the home to restart the boiler." *Id.* (citing *Compl.* ¶ 11). CUD opines that the Marretts "cannot credibly dispute that had the heating system continued functioning as it had since Plaintiffs purchased the property, the damage would not have occurred." *Id.*

At bottom, CUD argues the responsibility to ensure the pipes did not freeze belonged solely to the Marretts, not the Defendant. *Id.* The Defendant directs the Court to Paragraph 13 of the Contract, which describes Maintenance of Plumbing. *Id.* at 9-10 (citing *2011 Contract* ¶ 13). Paragraph 13 states "the customer must maintain the plumbing . . . within his/her own premises in good repair and protect them from freezing . . .. If damage does occur, the Customer is liable for any expenses incurred." *2011 Contract* ¶ 13. CUD says this provision means that the customer— here, the Plaintiffs—bears the responsibility to protect the plumbing from freezing. *Mot. to Dismiss.* at 10.

Thus, the Defendant alleges that the damage claimed by Plaintiffs arose from their own failure to protect and/or inspect their home from damage caused by freezing pipes. *Id.* "Plaintiffs seem to recognize that fact and attempt to proffer that they did not know they needed to protect the pipes," CUD says; however, "[t]his is directly contradicted by the November 18, 2021 email," which shows that "[t]hey knew the system was energized." *Id.* "Plaintiffs acknowledge they were notified by email on November 18, 2021[] that the bank (mortgage holder) hired a technician to

12

operate/energize the hot water heating system, which had no oil." *Id.* at 3.[6]  The bank thus restored the water service to restart the hot water heating system following an oil delivery and "Plaintiffs were informed oil was delivered 'to protect against frozen pipes.'" *Id.*[7]  Plaintiffs responded five days later, instructing the bank to cease all communications with their realtor.  *Id.*   From this, CUD says that the Marretts effectively admitted they had notice: the November 18, 2021 email "told [Plaintiffs] that the hot water heating system was restarted, and oil was delivered to protect the pipes from freezing." *Id.* at 8.  The cause of the water damage, CUD emphasizes, is Plaintiffs' inaction in response to this notice.  "After actual Notice by the Bank, Plaintiffs not CUD failed to perform their obligations under the Contract to protect the plumbing.  There is no fact alleged that Plaintiffs checked the property or had others check the property for six months over a Caribou winter knowing the amount of oil delivered in early November." *Id.* at 13.

At bottom, CUD urges the Court to grant its motion to dismiss as to Count One because CUD is immune and, if the Court reaches the merits, because it did not breach a material contract term and was not the proximate cause of the alleged water damage.[8]

---

[6]     The Defendant cites "Appendix 1 at Paragraph 26, Page 7 of 33." *Mot. to Dismiss* at 3.  The Court is unsure to what the Defendant is citing.  Attachment 1 to the motion to dismiss is the CUD's 2011 Terms and Conditions, consisting of twelve pages.

[7]     The Defendant cites "Appendix F, Email." *Mot. to Dismiss* at 3.  The Court is unable to locate this attachment.

[8]     CUD additionally argues that there is "no issue with access," as the Contract explicitly gives the Defendant the right to access the meter on the premises, *Mot. to Dismiss.* at 10, and "Plaintiffs point to no Contract language" that says otherwise. *Id.* at 12.  The Defendant says that Plaintiffs' argument as to unauthorized use is "misplaced as it applies to persons without [CUD] authorization not Plaintiffs' authorization," *id.* (citing *Compl.* ¶ 27), and argues "[p]ointing out a Breach in the

### 3.     The Section 1983 Claim

The Defendant moves the Court to dismiss Count Two, Plaintiffs' section 1983 claim, arguing that the complaint fails to show CUD is liable for the actions of its employees under a theory of respondeat superior.  *Id.* at 14.   CUD explains, "[a]ccording to Plaintiffs' Complaint, an employee of the CUD was responsible for the decision not to provide Notice of Reconnection and the Reconnection at the meter itself," but contends the Marretts do not allege that failing to provide such notice "was made in accordance with any official policy of the CUD," nor did they allege that there was a "custom" or "practice" within the CUD with regard to when or under what conditions reconnected service required notice.  *Id.*  Absent such allegations, CUD says the Supreme Court's holding in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), precludes Plaintiffs' recovery pursuant to 18 U.S.C. § 1983.  *Id.*

Here, CUD says, Plaintiffs have not identified a municipal policy or custom that resulted in the alleged deprivation of what they claim is a constitutional right. *Id.* at 15.  CUD characterizes the Plaintiff's second count as a claim "that water service was restored without notice," and counters there "is no constitutional right to notice when your water is restored."  *Id.*  "Civil rights, privileges, and immunities enumerated in the Constitution do not include notice of water service added to a property you own but do not inhabit," CUD opines, directing the Court to the Supreme Court's analysis of "property" in *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an

Contract still requires demonstrating that the specific breach is the proximate cause of the damage." *Id.* at 10.

14

abstract need or desire for it.  He must have more than a unilateral expectation of it. [He] must, instead, have a legitimate claim of entitlement to it").

"[T]he best Plaintiffs can muster," CUD avers, "is that they did not receive Notice of CUD restoration at the water meter on November 4, 2021, but did get actual Notice on November 18, via email from the Bank that water was in the house and operating the hot water boiler to protect the pipes from freezing." *Id.* at 16.  CUD points out that, in response to notice from the Bank, "Plaintiffs apparently did nothing but terminate the local Real Estate Agent with immediate access to the house interior"; they did not, however, call or send a letter to CUD, nor pursue any legal recourse against them at that time. *Id.*

In sum, the Defendant moves the Court to dismiss both claims against it in Plaintiff's complaint, arguing pursuant to Rule 12(b)(6) that both fail to state a claim upon which relief can be granted.

## C.    The Marretts's Opposition

First, the Marretts aver that the Defendant's motion to dismiss "fails to address a critical element of Plaintiffs' claims—that CUD, acting under the color of state law, improperly began sending water bills directly to the bank before foreclosure proceedings had even commenced." *Pls.' Opp'n* at 1.  They reassert that this is not merely a procedural oversight, but a "severe breach" that had "significant consequences for Plaintiffs." *Id.*

15

### 1.   The Statute of Limitations Issue

Responding to the Defendant's argument that their claims are barred by a statute of limitations, the Marretts reassert they are entitled to equitable tolling in the instant case.  *Id.* at 3 (citing *Irwin*, 498 U.S. at 96).  The Plaintiffs also remind the Court that they are owed procedural leniency because they are pursuing their claims pro se.  *Id.*

### 2.   The Breach of Contract Claim

The Marretts argue they have adequately pleaded a claim for breach of contract and thus the Court should dismiss the Defendant's motion to dismiss as to Count One.  *Id.*  They proffer that CUD's reliance on the MTCA is "misplaced" because this is a contract claim, not a tort claim, and the Defendant's asserted limitations on liability "do not apply to the deliberate and negligent actions alleged."  *Id.* at 4. Plaintiffs conclude that the Defendant "fails to address the improper redirection of Plaintiffs' water bills to the bank, a clear breach of the contract" that caused "extensive damage to the Plaintiffs' property."  *Id.*

### 3.   The Section 1983 Claim

Turning to the Defendant's discussion of *Monell*, 436 U.S. 658, the Marretts characterize CUD sending water bills directly to the bank as "more than just an administrative oversight; it was part of a broader pattern of conduct that constitutes a policy or custom within CUD."  *Id.* (citing *Monell*, 436 U.S. at 694).

16

### D.     CUD's Reply

#### 1.     The Breach of Contract Claim

CUD first responds to the Marretts's allegation that the Defendant violated their constitutional rights by sending their water bills to the bank.  *Def.'s Reply* at 1. Asserting there is no legal support for Plaintiffs' position that this amounts to a constitutional violation, CUD says Plaintiffs do not explain their allegation that the Defendant deprived them of "critical information" and "never say exactly what this was." *Id.*  CUD emphasizes that the Marretts already knew in November that there were only 100 gallons of heating oil, and their water system was operational inside the home.  *Id.*  "It is disingenuous to suggest that if [an individual] know[s] [their] pipes are full of water and [they] have no heat in a home in Caribou, Maine that [they] are unaware of a potential freezing issue."  *Id.* at 1-2.  CUD says that a contract must be "interpreted on its terms," and contends that, here, Plaintiffs miss that the underlying agreement has a limitation on liability "unambiguously limit[ing] claims to those available under the MTCA."  *Id.* at 3.

#### 2.     The Section 1983 Claim

The Defendant restates its arguments that the Marretts's complaint does not plead facts showing CUD should be held vicariously liable for the actions of an employee in the instant case, noting "there is no custom or practice alleged in the Complaint," nor "facts alleged demonstrating that the practice was pervasive."  *Id.* at 2.  "One or two missteps" will not meet this burden."  *Id.* at 2-3 (citing *Hildreth v.*

*Butler*, 960 F.3d 420, 426 (7th Cir. 2020)).  CUD reasserts the Plaintiffs have not plausibly alleged a deprivation of a constitutional right.  *Id.* at 3.

## IV.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(6)

The Defendant brings its motion pursuant to Federal Rule of Civil Procedure 12(b)(6), which requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  To state a claim, a complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  In other words, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Plausible means "'something more than merely possible' or 'merely consistent with a defendant's liability.'"  *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (internal citation omitted) (quoting *Schatz*, 669 F.3d at 55; *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011)).  Determining a claim's facial plausibility is a "'context-specific' job that compels [judges] 'to draw on' [their] 'judicial experience and common sense.'"  *Schatz*, 669 F.3d at 55 (quoting *Iqbal*, 556 U.S. at 679).

The judicial inquiry on a 12(b)(6) motion is a "two-step analysis." *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz*, 669 F.3d at 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements"). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

## V.   DISCUSSION

### A.   The Statute of Limitations Issue

As a preliminary matter, the Court addresses the statute of limitations issue raised by both parties. The Plaintiffs did not identify which statute of limitations, or for which of their two counts, they fear they may have missed, but aver any statute of limitations has been equitably tolled. The Defendant suggests Plaintiffs may be referring to the two-year statute of limitations for municipal tort actions, 14 M.R.S.A. § 8110, and thus applicable to Count One.

The Marretts cite *Irwin* in support of equitable tolling. In *Irwin*, the Supreme Court explained:

> Federal courts have typically extended equitable relief only sparingly. We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

498 U.S. at 96 (citing *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984)).

The Court turns to whether either of the exceptional circumstances raised by *Irwin* are applicable to the Marretts's case: 1) a defective pleading filed within the limitations period or 2) CUD engaged in misconduct that tricked or induced the Marretts to miss the statute of limitations deadline. The Plaintiffs say Ms. Marretts's mother informed them "that she could hear water pouring into her daughter's house and to request that [CUD] immediately shut the water off" on May 9, 2022. *Compl.* at 5. On June 1, 2022, CUD told the Marretts that 1.8 million gallons of water had flooded their home over a period of approximately four-and-a-half months. *Id.* at 6.

The Marretts filed their complaint in this case on July 16, 2024, outside the two-year statute of limitations for municipal tort actions under 14 M.R.S. § 8110. *Compl.* However, on July 26, 2022, the Marretts moved to amend the counterclaim to the bank's foreclosure complaint to join CUD as party in their case against S&L "due to [CUD's] negligence and other wrongful actions." *Id.* at 6 (citing *id.*, Attach. 1, *Def.'s Br. in Support of Mot. for Leave to Amend and Supplement Countercl., and for Joinder of Additional Defs.*; *id.*, Attach. 2, *First Am. Countercl.*). The Maine Superior Court Justice presiding over the foreclosure complaint and counterclaim denied the Marretts's motion to join CUD as procedurally improper. *Id.*, Attach. 4, *Order on*

20

*Defs.-Counterclaimants' Mot. for Leave to Amend and Supplement Countercl. and Mot. to Strike* at 3, 8.  However, the Justice stated "[t]hese claims [against CUD] differ from the Marretts'[s] claims against [S&L] and its employees in that, as [CUD] points out in its opposition to the pending motion to amend, they are not mandatory counterclaims; the Marretts are free, if they wish, to advance these claims in a separate action." *Id.* at 8.

"We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period." *Irwin*, 498 U.S. at 96.  In line with *Irwin* as well as appellate courts' instruction to district courts reviewing pro se pleadings to construe these submissions liberally, *see Sanchez v. Brown Univ.*, No. 23-1983, 2024 U.S. App. LEXIS 15530, at *1 (1st Cir. 2024) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), the Court concludes that the Marretts's claim against CUD was equitably tolled until either the Marretts's defective counterclaim on July 26, 2022 or the Superior Court's March 3, 2023 denial of their motion for leave to amend and supplement their counterclaim. The Marretts's complaint in this case, filed on July 16, 2024, was thus filed within two years of the date of equitable tolling, July 26, 2022 or March 3, 2023.  *See Irwin*, 498 U.S. at 96.

The Court proceeds to the merits of Counts One and Two.

## B.   The Breach of Contract Claim

The Court begins by addressing another preliminary issue: the scope of the record it may consider.  "Ordinarily, a court ruling on a motion to dismiss may only

consider whether the factual allegations within the four corners of the plaintiff's complaint state a plausible claim for relief*.*" *James D. Julia, Inc. v. Dan Murphy Auctions, LLC*, No. 1:21-cv-00025-JAW, 2021 U.S. Dist. LEXIS 115124, at *21 (D. Me. June 21, 2021) (citing *Doe v. Pawtucket Sch. Dep't*, 969 F.3d 1, 8 (1st Cir. 2020)). That said, "when . . . a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Id.* at 21-22 (quoting *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998)). The Plaintiffs did not attach their contract with CUD to their complaint; however, CUD attaches contracts from 2011 and 2021 to their motion to dismiss. *See 2011 Contract; 2021 Contract.* Based on the claim's strong links to and inherent dependance on the terms of the contracts and the lack of any challenge to their authenticity by the Plaintiffs, the Court will consider the contracts attached by CUD in deciding the present motion.

"Under Maine law, to recover under a breach of contract claim, a plaintiff must establish (1) breach of a material contract term; (2) causation; and (3) damages." *Tate & Lyle Ingredients Ams., Inc. v. Transp. Distrib., LLC*, 746 F. Supp. 2d 189, 196 (D. Me. 2010) (quoting *BlueTarp Fin., Inc. v. E. Materials Corp.*, Civil No. 08-324-P-S, 2009 U.S. Dist. LEXIS 66672, at *57 (D. Me. July 24, 2009); *accord Tobin v. Barter*, 2014 ME 51, ¶ 10, 89 A.3d 1088 ("In order to obtain relief for a breach of . . . contract,

the plaintiff must . . . demonstrate that the defendant breached a material term of the contract, and that the breach caused the plaintiff to suffer damages").

The Court begins by reading the contract for a material term which CUD may have been breached.  Plaintiffs argue, at bottom, that CUD is liable for the damage to their home due to its "[n]egligence in managing water service and failing to prevent damage, despite the policy outlining the utility's limited liability only when following proper procedures." *Compl.* at 8.  In its motion to dismiss, CUD directs the Court to the text of the 2011 Contract's liability provision, which provides:

> **LIABILITY.**  The Utility will only be liable for any damages arising from claims to the extent liability is provided in the Maine Tort Claims Act.  The Utility makes no representations of warranties about the suitability of the water for any particular purpose.

*Mot. to Dismiss* at 8 (citing *2011 Contract* ¶ 16).

As the Defendant points out, the Plaintiffs did not address the scope of CUD's liability in their complaint or in their response in opposition to the motion to dismiss, nor did they otherwise assert a provision of the MTCA which could provide them with relief.  The Plaintiffs' only allusion to tortious conduct identified by the Court is their allegation that the Defendant breached the contract through its "[n]egligence in managing water service and failing to prevent damage." *Compl.* at 8.  Crucially, Plaintiffs do not point the Court to any provision in the MTCA that could provide them legal recourse for their negligence allegation.

Because the First Circuit has instructed the district courts to interpret pro se pleadings liberally, *Sanchez*, 2024 U.S. App. LEXIS 15530, at *1 (citing *Erickson*, 551 U.S. at 94), the Court looks to the MTCA to see if there is an exception to

23

governmental immunity that gives Plaintiffs a plausible claim to relief. The Marretts in their complaint state that the Defendant is a municipal entity, *Compl.* ¶ 2, and 14 M.R.S.A. § 8103, titled "Immunity from suit," says "[e]xcept as otherwise expressly provided by statute, all governmental entities shall be immune from suit on any and all tort claims seeking recovery of damages." 14 M.R.S.A. § 8103. However, the MTCA includes four exceptions to immunity in 14 M.R.S.A. § 8104-A:

> Except as specified in section 8104-B, a governmental entity is liable for property damage, bodily injury or death in the following instances.
>
> 1. Ownership; maintenance or use of vehicles, machinery and equipment.
>
>    . . . .
>
> 2. Public buildings.
>
>    . . . .
>
> 3. Discharge of pollutants. A governmental entity is liable for negligent acts or omissions in the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalines, toxic chemicals, **liquids** or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, **but only to the extent that the discharge, dispersal, release or escape complained of is sudden and accidental.**
>    . . . .
>
> 4. Road construction, street cleaning or repair.

14 M.R.S.A. § 8104-A(1)-(4) (emphasis added by the Court). The Defendant avers that Plaintiffs' allegations of property damage to their private home do not fall within any of these four exceptions. *Mot. to Dismiss* at 8.

The Court agrees with CUD, but this conclusion warrants some explanation as to the effect of 14 M.R.S.A. § 8104-A(3). First, "[b]ecause 'the MTCA employs an

24

exception-to-immunity approach rather than an exception-to-liability approach,' when we consider the exceptions to immunity for governmental entities, 'we start from the premise that immunity is the rule and exceptions to immunity are to be strictly construed.'" *Day's Auto Body, Inc. v. Town of Medway*, 2016 ME 121, ¶ 8, 145 A.3d 1030 (quoting *Thompson v. Dep't of Inland Fisheries & Wildlife*, 2002 ME 78, ¶ 5, 796 A.2d 674); *see* JACK H. SIMMONDS, DONALD N. ZILLMAN & ROBERT H. FURBISH, MAINE TORT LAW, § 15.21 (2018 ed.) ("Immunity is the rule and governmental liability the exception"). In *Drake v. Smith*, 390 A.2d 541 (Me. 1978), the Maine Law Court wrote:

> The immunity of the sovereign from suit is one of the highest attributes inherent in the nature of sovereignty. Accordingly, the large majority of jurisdictions hold it necessary that the sovereign's consent to be sued be given by the Legislature, as the only appropriate body to speak in this regard on behalf of the sovereign.

*Id.* at 543. In evaluating whether the Marretts's claim fits within a statutory exception to immunity, the Court has applied the Law Court's directives.

Turning to § 8104-A(3)'s discharge of pollutants exception, although the water that flooded the Marretts's home is undeniably a "liquid,"[9] the Court does not conclude the liquid's "discharge, dispersal, release or escape . . . is sudden and accidental." 14 M.R.S.A. § 8104-A(3). Indeed, the Marretts allege that a representative of the bank restored the water service to the Property on November 4, 2021 and they did not discover the water damage until May 9, 2022. *Compl.* at 5-6. As based on the Marretts's own allegations, water had been released into their home

---

[9] For purposes of this order, the Court assumes, without deciding, that water could constitute a pollutant.

for approximately four-and-a-half months; it would stretch the imagination to conclude this amount of time was "sudden." *Id.* at 6. In *A. Johnson & Co., Inc. v. Aetna Casualty & Surety Company*, 933 F.2d 66 (1st Cir. 1991), the First Circuit interpreted "sudden and accidental" under Maine law in the context of an insurance exclusion and wrote that the "unambiguous, plain and commonly accepted meaning" of "sudden" would be "temporally abrupt." *Id.* at 72; *accord Joseph & Catherine-Young v. Libby*, No. CV-96-473, 1997 Me. Super. LEXIS 206, at *11-12 (Me. Super. Ct. July 17, 1997) (interpreting the MTCA pollution exception). In line with this precedent, four-and-a-half months cannot be deemed sudden or temporally abrupt.

Although the Court could end its inquiry here, it makes one additional observation: the contract expressly assigned responsibility for the particular harm Plaintiffs now allege. The Marretts proffer CUD was negligent in "managing water service and failing to prevent damage" occasioned by the home's freezing pipes. *Id.* at 8. Paragraph 13 of the Contract, titled Maintenance of Plumbing, specifically states that "[a] customer must maintain the plumbing and fixtures within his/her own premises in good repair and protect them from freezing . . .. If damage does occur, the Customer is liable for any expenses incurred." *2011 Contract* ¶ 13. From this plain language, the duty to protect the pipes from freezing rested with the Plaintiffs, not the Defendant. It stands to reason that CUD could not have breached a duty that it did not have in the first place. Thus, even if the government had statutorily waived its immunity from this kind of action in 14 M.R.S.A. 8104-A, which it did not, Plaintiffs' specific contract with CUD would have waived CUD's liability.

26

Concluding that Plaintiffs have not "state[d] a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678, the Court thus grants CUD's motion to dismiss as to Count One.

### C.    The Section 1983 Claim

The Marretts also bring a due process claim pursuant to 42 U.S.C. § 1983. *Compl.* at 10.  Positing first that CUD is a quasi-municipal entity "and was acting under color of state law at all relevant times," Plaintiffs proceed to argue that CUD's restoration of their water service deprived them of their property without due process "by failing to provide proper notice and an opportunity to address the restoration of water service." *Id.*

CUD argues that *Monell*, 436 U.S. 658, precludes Plaintiffs' recovery pursuant to 42 U.S.C. § 1983 because they have not pleaded an employee's failure to provide this notice "was made in accordance with any official policy," nor do they allege CUD had a "custom" or "practice" "with regard to when or under what conditions reconnected service required notice." *Mot. to Dismiss* at 14.

In their reply, the Marretts contend CUD's decision to send water bills directly to S&L was "part of a broader pattern of conduct that constitutes a policy or custom within CUD," and thus their requested relief is consistent with *Monell*. *Pls.' Opp'n* at 4 (citing *Monell*, 436 U.S. at 694).

42 U.S.C. § 1983 provides a civil cause of action against any person who, under color of state law, custom, or usage, subjects another to deprivation of any rights, privileges, or immunities secured by the Federal Constitution and laws.  The Maine

Civil Rights Act, 5 M.R.S. §§ 4681-85, patterned after 42 U.S.C. § 1983, provides a private cause of action for violations of constitutional rights under the Federal or Maine Constitutions, by any person, "whether or not acting under color of law." 5 M.R.S. § 4682. Municipalities and local governments are "persons" within the meaning of § 1983. *Monell*, 436 U.S. at 690; *see also Fincher v. Town of Brookline*, 26 F.4th 479, 485 (1st Cir. 2022).

Therefore, municipalities and local governments "could be liable in certain cases when its agents and employees commit[] constitutional violations." *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4, 25 (1st Cir. 2005). However, municipalities and local governments cannot be held liable under a theory of respondeat superior. *Id.* (citing *Monell*, 436 U.S. at 691-95). "Instead, it is only when the governmental employees' 'execution of a government's policy or custom . . . inflicts the injury' and is the 'moving force' behind the constitutional violation that a municipality can be liable." *Id.* (citing *Monell*, 436 U.S. at 694).

In other words, assessing liability against CUD "requires two basic elements: first, that the Plaintiffs' harm was caused by a constitutional violation, and second, that the [municipal entity] be responsible for that violation . . .." *Id.* at 25-26 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)).

First, the Plaintiffs have not pleaded any form of due process violation that has been recognized by courts for "failing to provide proper notice and an opportunity to address the restoration of water service." *Compl.* at 10. The Court agrees with CUD that this alleged violation is not encompassed by the Supreme Court's description of

property interests in *Roth*: "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577.  The Marretts have not directed the Court to caselaw or other evidence that would allow it to conclude otherwise.

Even if the Court were to find otherwise, the result is the same.  As far as the second element, responsibility, CUD is only potentially liable "under section 1983 if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation.'" *Haley v. City of Boston*, 657 F.3d 39, 51 (1st Cir. 2011) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)).  More specifically, "it is only when the governmental employees' 'execution of a government's policy or custom inflicts the injury' and is the 'moving force' behind the constitutional violation that a municipality can be [held] liable." *Young*, 404 F.3d at 25 (quoting *Monell*, 436 U.S. at 694).

The question, therefore, is whether the Marretts have plausibly alleged that the actions of CUD occurred "pursuant to an official policy or custom." *Welch v. Ciampa*, 542 F.3d 927, 941 (1st Cir. 2008) (citing *Monell*, 436 U.S. at 694).  The Marretts could "establish the existence of an official policy by showing that the alleged constitutional injury was caused by a formal decision of a municipal legislative body, or by a person with final policymaking authority." *Id.* (internal citation omitted) (citing *Owen v. City of Independence*, 445 U.S. 622 (1980); and *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-24 (1988)).  Alternatively, the Marretts

29

could demonstrate that "there was an official [CUD] policy of inadequate training or supervision." *Kelley v. LaForce*, 288 F.3d 1, 9 (1st Cir. 2002).

Here, the Marretts point to a single incident as the basis for municipal liability. Under the law, absent more, that is not enough to demonstrate a municipal policy. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker").

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. Plausible means "'something more than merely possible' or 'merely consistent with a defendant's liability.'" *Germanowski*, 854 F.3d at 71-72 (internal citation omitted) (quoting *Schatz*, 669 F.3d at 55). In adjudicating a motion to dismiss, the Court views all facts in the light most favorable to the non-movant; however, courts may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements"). *Schatz*, 669 F.3d at 55.

The Marretts's complaint contains no allegation that CUD's actions were the consequence of an official policy caused by a formal decision of a municipal legislative body or a person with final policymaking authority. The complaint also contains no allegation that the Defendant's actions were the result of an official policy of inadequate training or supervision. Therefore, as the motion to dismiss tests the

legal sufficiency of the allegations in the complaint, the complaint must fail. The only reference to this critical factual issue by the Marretts appears in their response to CUD's motion to dismiss. *Pls.' Opp'n* at 1-6. In their response, the Marretts state that CUD's decision to send their water bills directly to S&L was "more than just an administrative oversight; it was part of a broader pattern of conduct that constitutes a policy or custom within CUD." *Pls.' Opp'n* at 4.

Under First Circuit law, when ruling on a motion to dismiss, a court is not required to accept a conclusory allegation. *Ponsa-Rabell v. Santander Sec. LLC*, 35 F.4th 26, 30 n.2 (1st Cir. 2022); *O'Brien v. Deutsche Bank Nat'l Tr. Co.*, 948 F.3d 31, 35 (1st Cir. 2020). The Court views the Marretts's assertion in their opposition to CUD's motion to dismiss to be such a conclusory allegation, bereft of any specific factual support. Thus, the Marretts have provided the Court with no factual allegations or evidence from which it may reasonably infer otherwise.

Based on the foregoing, the Court grants CUD's motion to dismiss as to Count Two.

## VI.   CONCLUSION

The Court GRANTS Defendant Caribou Utilit[ies] District's Motion to Dismiss Plaintiffs David T. Marrett and Sandy J. Marrett's Complaint with Incorporated Memorandum of Law (ECF No. 9); having granted the motion as to all Counts, the Court DISMISSES the Marretts's complaint without prejudice.

The Court had previously stayed the Plaintiff's motion for summary judgment pending resolution of the motion to dismiss. *Order* (ECF No. 22). As the motion to

dismiss is no longer pending, and the Court in this order grants the motion to dismiss, the Court now lifts the stay and DISMISSES without prejudice the Plaintiffs' Motion for Summary Judgment (ECF No. 11).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of December, 2024